## In re Anonymous No. 4 D.B. 77

Disciplinary Board Docket no. 4 D.B. 77.

PEARLSTINE, *Board Member,* January 13, 1978 — Pursuant to Rule 208(d) of the Pennsylvania Rules of Disciplinary Enforcement (rules) the Disciplinary Board of the Supreme Court of Pennsylvania (board) herewith submits its findings and recommendations to your honorable court with respect to the above proceedings:

### I.   HISTORY OF PROCEEDINGS

On February 7, 1977, a petition for discipline was filed by chief disciplinary counsel against respondent. The petition for discipline contained four separate charges. The first charge, hereinafter referred to as Charge 1, set forth that respondent violated 13

Disciplinary Rules of the Code of Professional Responsibility as follows:

a. D.R. 1-102(A)(3): A lawyer shall not engage in illegal conduct involving moral turpitude;

b. D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

c. D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice;

d. D.R. 1-102(A)(6): A lawyer shall not engage in any other conduct that adversely reflects on his fitness to practice law;

e. D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him;

f. D.R. 7-101(A)(1): A lawyer shall not intentionally fail to seek the lawful objectives of his client;

g. D.R. 7-101(A)(2): A lawyer shall not intentionally fail to carry out a contract of employment;

h. D.R. 7-101(A)(3): A lawyer shall not intentionally prejudice or damage his client during the course of the professional relationship;

i. D.R. 9-102(A): A lawyer shall preserve the identity of funds and property of a client;

j. D.R. 9-102(A)(1): A lawyer shall not commingle funds except to the extent necessary to pay bank charges;

k. D.R. 9-102(B)(2): A lawyer shall properly identify and safeguard properties of a client;

l. D.R. 9-102(B)(3): A lawyer shall maintain records of all funds and render appropriate accounts to his client;

m. D.R. 9-102(B)(4): A lawyer shall promptly pay or deliver to his client all property which the client is entitled to receive.

The thrust of this complaint is that respondent

was named executor in the will of [A], who died testate on February 14, 1968, and letters testamentary were granted by the register of wills of [  ] County on February 27, 1968, to respondent. [B] was the sole residuary legatee under the aforesaid will. Respondent failed to carry out any of the requirements or perform the duties required by law of an executor; failed to pay the inheritance tax which resulted in the imposition of a penalty of $1,017.93 on the estate; failed to make distribution as provided by the terms of the will, which conduct was cited in a petition filed by [B] with Judge [C] of the Orphans' Court Division of the Court of Common Pleas of [  ] County, who removed him as executor on January 15, 1973, and directed him to file an account. Upon his failure so to do, Judge [C] issued a Writ of Attachment of Person against respondent for contempt on February 2, 1973. On March 28, 1973, Judge [C] appointed [D], Esq., the court examiner, to examine the records of the estate and to ascertain the status of the estate assets.

The examination revealed the disbursement of $7,100 by 11 checks made payable to respondent or to [E], Esq., an employe in respondent's law office. Three checks aggregating $2,100 made payable to [E], bore the forged endorsement of [E], admittedly placed thereon by respondent and found their way into respondent's bank account. [E] had no knowledge of the matter and was not aware that the checks were drawn to his order, endorsed by [respondent] and deposited in [respondent's] account, nor did he perform any services for the estate and would have no lawful claim to any part of the said sum of $7,100.

On March 8, 1973, by a check drawn on his per-

sonal account, respondent redeposited the said $7,100, but failed to retain the deposit slip so that the court appointed examiner could be made aware of this illegal withdrawal and coverup redeposit. When [D] requested respondent to turn over the deposit slips, he was able to provide all of them except for the one reflecting the March 8, 1973 deposit of $7,100.

The matter was referred to hearing committee [ ] consisting of [ ], Esq., acting chairman, [ ], Esq., and [ ], who did not participate in the proceeding. Two hearings were held in the matter, one on March 28, 1977, and one on June 27, 1977. At both hearings petitioner was represented by counsel and respondent was likewise represented by counsel, [F], Esq., of the [ ] Bar.

Petitioner presented its case by offering three documents, the first marked Document No. 1, being a stipulation containing 19 paragraphs of fact with subparagraphs within containing 12 pages signed by assistant disciplinary counsel and by [F], Esq., attorney for respondent. Document No. 2, executed by the same attorneys, was filed and received in evidence, which stipulation did not contain any additional facts. Document No. 3, being an addendum to the stipulation, dealt specifically with Charge 4, hereinafter referred to. Various exhibits were introduced in evidence, including copies of the petitions and decrees filed in the Orphans' Court Division of the Court of Common Pleas of [ ] County, having to do with the Estate of [A]. Other exhibits included in the 19 physical exhibits attached to the record are in the main, correspondence between respondent and assistant disciplinary counsel and by respondent with [G] Esq.,

who succeeded respondent as the attorney for [H] the complainant in Charge 3, hereinafter referred to.

Neither petitioner nor respondent filed any exceptions to the hearing committee report and, therefore, we would adopt the findings of fact of the hearing committee, which found as facts those facts stipulated by the parties as 1 through 19, which stipulation is contained in Document No. 1; those facts stipulated by the parties and contained in Document No. 2 and designated as Nos. 1 through 5, inclusive; those facts contained in addendum to stipulation in Document No. 3 and designated as Nos. 1 through 4, inclusive. The facts taken from the stipulation are as follows: (Exhibits cited are those of record, a part of the transcript of the hearing.)

1. Respondent, [ ], Esq., is an attorney admitted to practice law in the Commonwealth of Pennsylvania and his office is located at [ ] Street, [ ], Pennsylvania.

## CHARGE I

2. By letter dated December 16, 1975, petitioner advised respondent of the allegations of misconduct and afforded respondent an opportunity to state his position with respect to the allegations. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 1.

3. In response to the aforementioned letter, respondent filed an answer to the allegations con-

tained in Exhibit 1. Said letter which is dated February 27, 1976, is attached hereto and made a part hereof as Exhibit 2.

4. If the register of wills were called to testify, he would testify as follows:

A. The records of the register of wills show that [respondent] was named as executor in the will of [A], who died testate on February 14, 1968. Letters testamentary were granted by the register of wills on February 27, 1968 to [respondent].

B. As a result of a petition filed by [B], the Honorable [C], Orphans' Court, Court of Common Pleas (hereinafter "Judge [C]") ordered [respondent] removed as executor on January 15, 1973, and directed him to immediately file an accounting.

C. On or about February 2, 1973, Judge [C] issued a writ of attachment of person against [respondent] for failing to comply with the January 15, 1973 order. A copy of the petition and Judge [C's] order are attached hereto and made a part hereof as Exhibit 5.

D. On or about March 28, 1973, Judge [C] ordered [D], Esq. (hereinafter "D"), the court examiner, to examine the records of the estate and to ascertain the status of the estate.

E. An accounting was filed in April, 1973.

6. If [D], Esq., were called to testify, he would testify that the examination of the Estate of [A] revealed the following:

A. The following checks were disbursed from [respondent's] Executor Account Number 339-255-2 in the [   ] Bank wherein [respondent] maintained the estate funds:

| Chk. # | Amount | Date | Payee | Endorsement |
|--------|--------|------|-------|-------------|
| 2 | $1,000 | 2/28/68 | [E] | [E] |
| 1 | $1,000 | 2/29/68 | [respondent] | [respondent] |
| Blank | $ 800 | 3/15/68 | [respondent] | [respondent] |
| 4 | $ 800 | 3/18/68 | [E] | [E] (Indistinguishable) |
| Blank | $ 300 | 8/29/68 | [respondent] | [respondent] |
| Blank | $ 200 | 11/27/68 | [respondent] | [respondent] [I] |
| Blank | $ 300 | 6/24/69 | [E] | [E] [respondent] |
| Blank | $ 300 | 6/24/69 | [respondent] | [respondent] |
| Blank | $ 200 | 11/5/70 | [respondent] | [respondent] |
| Blank | $ 200 | 11/5/70 | [respondent] | [respondent] |
| Blank | $2,000 | 3/17/72 | [respondent] | [respondent] |

The originals of the above listed checks have either been misplaced or lost. In any event, they are no longer available. Accordingly, true and correct copies of the originals are attached hereto and made a part hereof as Exhibits 6A through 6K.

B. These checks represent a total withdrawal by [respondent] of $7,100 on the estate account.

7. If [E], Esq., were called to testify, he would testify as follows:

A. From 1966 to June of 1968, [E] was employed by [respondent's] law firm. During that period, he operated on a salary basis and received no additional fees.

B. In June of 1968, [E] left [respondent's] law firm and performed no additional work for [respondent] after June of 1968.

C. At no time, did [E] enter into an agreement with [respondent] that he would perform services for the estate of [A].

D. [E] performed no services on behalf of the Estate of [A].

E. With respect to the following checks (Exhibits 6A, 6D and 6G) drawn on [respondent's] Executor Account Number 339-255-2 in the [ ] Bank, [E] would give the following testimony:

| Chk. # | Amount | Date | Payee | Endorsement |
|---|---|---|---|---|
| 2 | $1,000 | 2/28/68 | [E] | [E] |
| 4 | $ 800 | 3/18/68 | [E] | [E] (Indistinguishable) |
| Blank | $ 300 | 6/24/69 | [E] | [E] Esquire [respondent] |

(1) [E] has never before seen these checks.

(2) Each check is made payable to [E] and his name is endorsed on the back of each of the checks. However, the endorsement is not his signature.

(3) [E] never authorized [respondent] to affix his signature to the aforementioned three checks.

(4) [E] never received the proceeds of these checks.

8. The following additional facts are agreed to and stipulated by and between petitioner and respondent:

A. At the time respondent became executor, he estimated his attorney fees for the complete administration of the estate at $5,000.

B. Thereafter, he drew said checks against the estate as advances on the estimated $5,000.

C. Three of these said checks (Exhibits 6A, 6D and 6G) totalling $2,100 were made payable to [E], Esq., an attorney employed by respondent's law firm, and were deposited by respondent in his own account.

D. At no time did respondent advise [E] that said checks were drawn to his order and at no time did

[E] authorize respondent to deposit said checks in respondent's account.

E. The total withdrawals of $7,100 exceeded respondent's own estimated fees by $2,100.

F. Respondent affixed the signature of [E] to three of the checks attached hereto as Exhibits 6A, 6D and 6G.

G. On March 8, 1973, respondent redeposited $7,100 into the executor account.

H. On March 14, 1973, respondent issued a check drawn on the executor account in the amount of $12,301 and made payable to the order of [B].

I. In response to [D's] request for the deposit slips to the estate account, respondent provided [D] with all of the said deposit slips except for the one reflecting the March 8, 1973 deposit of $7,100.

## CHARGE II

9. By letter dated December 16, 1975, petitioner advised respondent of the allegations of misconduct and afforded respondent an opportunity to state his position with respect to the allegations. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 1.

10. In response to the aforementioned letter, respondent filed an answer to the allegations contained in Exhibit 1. Said letter which is dated February 27, 1976, is attached hereto and made a part hereof as Exhibit 2.

11. If Mr. and Mrs. [B] were called to testify they would testify as follows:

A. Mr. and Mrs. [B] (hereinafter the "[B's]") signed an installment contract for the purchase of a

cemetery crypt from [ ] Memorial Park, [city, state] (hereinafter "[M.P.]").

B. Thereafter, the [B's] received notices from the [ ] Bank advising them that the aforesaid contract had been assigned pursuant to an assignment clause authorizing [M.P.] to assign the contract to the [ ] Bank thereby making the [B's] liable for finance charges in the amount of $504.

C. In or about March, 1968, the [B's] retained respondent to represent them in connection with the aforesaid assignment.

D. On the aforesaid date, the [B's] submitted to respondent all papers in their possession pertaining to the transaction in question, including a receipt for the deposit on the cemetery crypt, notices from the [ ] Bank and [M.P.], and the deed to the property.

E. Thereafter, the [B's] received oral and written demands for payment from the Bank.

F. On each occasion that demands for payment were received by the [B's] they notified respondent of these demands.

G. On each of the aforesaid occasions, respondent assured the [B's] that the matter was being taken care of.

H. By a letter dated May 1, 1968, respondent advised [ ] Bank and [M.P.] that he was representing the [B's] in connection with the contract to purchase a cemetery crypt. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 7.

I. Respondent took no further action to represent the [B's] in this matter. A certified copy of the docket entries is attached hereto and made a part hereof as Exhibit 8.

J. Respondent did not notify the [B's] that he was

withdrawing from this matter, but led them to believe he continued to represent them.

K. In or about February of 1974, the [B's] attempted to sell certain real property.

L. On the aforesaid date, the [B's] were advised that a judgment had been entered against the aforesaid property by the [ ] Bank on June 13, 1968, for the amount of $2,879.06 on the judgment note they previously executed with [M.P.]. (See Exhibit 9 attached hereto.)

12. If [J], Esq., were called to testify, he would testify as follows:

A. By letters dated March 28, 1974, June 6, 1974 and August 26, 1974, [J] wrote respondent for the purpose of obtaining the [B's] file in connection with the contract in question. True and correct copies of the said letters are attached hereto and made a part hereof as Exhibits 9, 10 and 11, respectively.

B. Respondent, with one exception, failed to respond to the aforesaid communications and failed to transfer the file upon request.

## CHARGE III

13. By letter dated January 12, 1976, petitioner advised respondent of the allegations of misconduct and afforded respondent the opportunity to state his position with respect to the allegations. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 12.

14. In response to the aforementioned letter, respondent filed an answer to the allegations contained in Exhibit 12. Said letter, which is dated March 22, 1976, is attached hereto and made a part hereof as Exhibit 13.

15. If Mrs. [H] (hereinafter "[H]") were called to testify, she would testify as follows:

A. Mrs. [H] sustained personal injuries in an automobile accident which occurred on or about October 6, 1963.

B. In or about October 1963, [H] retained respondent on a contingent fee basis for the purpose of instituting a personal injury claim against [K] (hereinafter "[K]"), the other party to the aforesaid accident.

C. During the period November, 1963, through November, 1974, [H] repeatedly sought information from respondent on the status of her claim.

D. In response to the aforesaid inquiries, respondent assured [H] that the case was routinely progressing.

E. By letter dated November 21, 1974, respondent advised [H] that the case would be settled in the near future. Said letter is attached hereto and made a part hereof as Exhibit 14.

F. Respondent failed to again communicate with [H] concerning the aforesaid case.

G. In or about June, 1971, [H] retained respondent to institute a divorce action.

H. On June 10, 1971, respondent filed a Complaint in Divorce on [H's] behalf, which was served on her husband on June 19, 1971.

I. Respondent failed to take any further action to procure a divorce for [H]. A certified copy of the docket entries is attached hereto and made a part hereof as Exhibit 15.

J. During the period June, 1971 through June, 1975, [H] repeatedly sought information from respondent on the status of her divorce action.

K. Respondent failed to advise [H] as to the progress of the aforesaid action.

L. In or about June, 1975, [H] retained [G], Esq., to assume representation of the aforesaid divorce action.

16. If [G], Esq., (hereinafter "[G]") were called to testify, he would testify as follows:

A. By letter dated June 3, 1975, [G] requested that respondent contact him for the purpose of transferring the [H] file pertaining to the divorce action. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 16.

B. Respondent failed to respond to the aforesaid communication or to forward the [H] file to [G].

C. Thereafter, [H] advised [G] that respondent was also representing her with respect to her personal injury claim against [K] and that she was unable to determine the status of this matter.

D. By letter dated June 26, 1975, [G] asked respondent to contact him concerning the aforesaid claim. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 17.

E. Respondent failed to respond to the aforesaid communication.

F. Thereafter, [G] repeatedly attempted to contact respondent by telephone concerning [H's] personal injury claim and her pending divorce action.

## CHARGE IV

17. By letter dated August 12, 1976, petitioner advised respondent of the allegations of misconduct and afforded respondent an opportunity to state his position with respect to the allegations. A true and correct copy of said letter is attached hereto and made a part hereof as Exhibit 18.

18. In response to the aforementioned letter, respondent filed an answer to the allegations con-

tained in Exhibit 18. Said letter which is dated October 27, 1976 is attached hereto and made a part hereof as Exhibit 19.

19. If [L] were called to testify, she would testify as follows:

A. [L] is the sister of [M], who died intestate in New York on July 22, 1965.

B. Thereafter, [respondent], Esq., was appointed administrator of [M's] Estate.

C. The first distribution from the proceeds of the estate occurred in February of 1977.

## II. DISCUSSION

Examining Charge I in the Estate of [A], the committee concluded that respondent violated four of the Disciplinary Rules and by inference dismissed the contentions of the petitioner as to the remaining nine charges. These Rules are as follows:

D.R. 1-102(A)(4): A lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

D.R. 1-102(A)(5): A lawyer shall not engage in conduct that is prejudicial to the administration of justice.

D.R. 6-101(A)(3): A lawyer shall not neglect a legal matter entrusted to him.

D.R. 9-102(B)(3): A lawyer shall maintain records of all funds and render appropriate accounts to his clients.

We would agree with the hearing committee that respondent violated the foregoing disciplinary rules. It would not be possible to find a violation of the rules dealing with intentional misconduct based upon the facts set forth in the stipulations.

In Charge II, dealing with the complaint of Mr. and Mrs. [B], rises no higher than a violation of D.R. 6-101(A)(3), a lawyer shall not neglect a legal matter entrusted to him. In this situation [B] consulted respondent with respect to a contract he had entered into with the [M.P.] for the purpose of purchasing grave lots. When [B] received notice form the [   ] Bank advising them that the aforesaid contract had been assigned them, bringing $504 for finance charges, they retained respondent, who wrote one letter and did not follow through or do anything later and the matter was dormant until February of 1974, when the [B's] attempted to sell some real estate and discovered that the [   ] Bank had entered judgment which constituted a lien in the sum of $2,879.06.

Thereafter the [B's] retained [J], Esq., to assume representation of the matter, who attempted over a considerable period of time to obtain a file from respondent concerning the matter which was required in order for him to pursue the matter and he was not successful in obtaining such file nor in communicating with respondent who ignored his telephone calls and letters.

Here again the stipulation rises no higher than the facts necessary to support a violation of D.R. 6-101(A)(3), as there is no evidence of any intentional misconduct.

Charge III contains two charges, the first was that [H] sustained personal injuries in October of 1963 and retained respondent the same month to institute a personal injury claim against one [K].

From November of 1963 through November of 1974, Mrs. [H] repeatedly sought information on the status of her claim. Respondent repeatedly assured Mrs. [H] that the case was routinely pro-

gressing. Respondent failed to file suit against [K] and as a result her claim was barred by the statute of limitations. It would have been barred on October 6, 1975. On November 21, 1974, respondent falsely advised Mrs. [H] that the case would be settled in the near future. Respondent failed to take any action to settle her claim.

In June of 1971, Mrs. [H] retained respondent to institute a divorce action. On July 10, 1971, he filed a complaint in divorce in the Court of Comon Pleas of [  ] County and caused service of the complaint upon her husband to be made on June 19, 1971. Thereafter, he failed to take any further action to procure a divorce for her. During the period from June 1971 through June of 1975, Mrs. [H] repeatedly sought information from respondent as to the status of her divorce action. She received no advice from respondent pertaining thereto. In or about June 1975, Mrs. [H] retained [G], Esq., to assume representation of the aforesaid divorce action. Despite repeated telephone calls and letters from [G], respondent failed to communicate with him concerning the divorce situation.

This conduct admitted by respondent in the stipulation is clear violation of D.R. 1-102(A)(4), a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation, and D.R. 6-101(A)(3), a lawyer shall not neglect a legal matter entrusted to him. Again there are no facts set forth in the stipulation from which intentional misconduct could be found.

Charge IV has to do with the appointment of respondent as administrator of the estate of [M], who died in New York on July 22, 1965. [L], the sister of the deceased, was the sole heir of the estate.

Between July 1965 and October 1976, respondent

failed to file an inventory, an accounting of the estate, he failed to file and pay the required tax returns and failed to make timely distribution of the estate. Document No. 3, being an addendum to the stipulation, sets forth that the first distribution from the proceeds of the estate, which occurred in February of 1977, comprised approximately 90 percent of the proceeds of the estate and that no further action has been taken by respondent due to his extremely poor health requiring major surgery.

Exhibit No. 18, detailed a letter for information from the office of disciplinary counsel to respondent. His answer on October 27, 1976, as is set forth in Exhibit 19, did not answer the questions asked and, therefore, the only facts from which a conclusion can be reached are those set forth in the stipulation at paragraph 19, from which may be concluded that as to this charge respondent has violated D.R. 6-101(A)(3), providing that a lawyer shall not neglect a legal matter entrusted to him. Here the first distribution occurred approximately 11½ years after death of decedent.

Document No. 2 is a stipulation which recites that the appropriate discipline to be accorded respondent is a suspension from the practice of law for a period of six months. The stipulation further provides that it is agreed between petitioner and respondent that the recommendation for discipline is not binding on the hearing committee, this board or the Supreme Court of Pennsylvania. The reasons for the stipulation are that respondent completely and fully cooperated with petitioner during the course of the investigation; that he agreed to take the necessary steps to remedy the matters for which he still had responsibility; that the proceedings would be expedited by relying upon the stipulation

instead of live testimony; that respondent is suffering from a serious heart ailment which will require major surgery and finally, that the stipulation was conditioned on the truthfulness of respondent's representation that there is no other evidence of misconduct by respondent in connection with the matters which are the subject of this proceeding.

In mitigation, respondent settled with Mrs. [H] and paid her the sum of $1,700 on January 30, 1976, which sum was negotiated by Mr. [G], her attorney and Mr. [N], an attorney in [respondent's] office.

By the redeposit of the sum of $7,100 in the estate of [A], respondent eliminated any claim for executor's commission or counsel fees. In a statement admitted in evidence and set forth in the record, being a six page typewritten statement signed by respondent, he sets forth that he paid out of his own funds $4,638.55 to reimburse the estate of [A] for expenses and losses occasioned by his delay and procrastination.

## III.  RECOMMENDATION

The Disciplinary Board respectfully recommends to your honorable court that the recommendation of the hearing committee be adopted and that respondent, [   ], be suspended from the practice of law for a period of six months.

## ORDER

EAGEN, *C.J.*, February 3, 1978—The recommendation of the Disciplinary Board of the Su-

preme Court of Pennsylvania, dated January 13, 1978, is hereby rejected; and it is ordered that [respondent] be, and he is forthwith suspended from the bar of this court and in all the courts under its supervisory jurisdiction, for a period of one year and until further order of this court.

Mr. Justice Nix and Mr. Justice Manderino would accept the recommendation of the Board.